**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

BRIAN B. TUCKER,

　　　　Defendant - Appellant.

No. 07-4002

(D. Utah)

(D.C. No. 04-CR-170-DB)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

In a prior order, this panel has determined unanimously to grant the parties'

request for a decision on the briefs without oral argument. See Fed. R. App. P.

34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral

argument.

Defendant-appellant Brian B. Tucker pled guilty, pursuant to a plea

agreement, to aiding and abetting armed bank robbery, in violation of 18 U.S.C.

§§ 2113(a), (d) and 2; aiding and abetting the using and carrying of a firearm in

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2; using an explosive to commit a felony, in violation of 18 U.S.C. §§ 844(h)(1) and 2; and aiding and abetting bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2. Tucker was sentenced to twelve years' imprisonment, followed by four years of supervised release. Tucker appeals, arguing the government breached the plea agreement. We affirm.

## BACKGROUND

The facts are not disputed and, as detailed in Tucker's statement in advance of plea, reveal the following: On February 20, 2004, Tucker aided and abetted in the commission of an armed bank robbery at the Far West Bank in Orem, Utah, in which two other defendants, Troy Wendall Hansen and Steven Bennett Bingham, obtained approximately $2,200. Hansen carried a shotgun into the bank and discharged a shell into a wall; Bingham carried a handgun. Tucker assisted in the robbery by creating a diversion across town by placing an explosive device underneath a car and calling in a bomb threat to police, and by calling another bank and telling a bank employee that he (Tucker) had placed a bomb in the bank building. On March 5, 2004, Tucker assisted in planning and shared in the proceeds of an unarmed robbery at Zion's Bank in Herriman, Utah, in which Bingham and Hansen entered the bank and obtained approximately $78,000.

After his arrest, Tucker agreed to plead guilty to four counts originating out of the robberies, in exchange for several promises from the government. Pursuant to the plea agreement, the government agreed to recommend "the ten year minimum mandatory consecutive sentence as provided for pursuant to 18 U.S.C. § 924(c)." Statement by Defendant in Advance of Plea of Guilty at ¶ 12(B)(2), R. Vol. III at Doc. 140 (hereafter "Statement"). The government made no specific sentencing recommendations regarding the other three counts to which Tucker agreed to plead guilty. The government also agreed to recommend a two or three level reduction in Tucker's offense level under the advisory United States Sentencing Commission, Guidelines Manual ("USSG"), if Tucker demonstrated an acceptance of responsibility, and agreed to consider filing a motion for a downward departure for substantial assistance under USSG § 5K1.1, which would permit the district court to sentence below any applicable statutory minimum sentences.[1]

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR") which calculated an advisory sentencing range under

---

[1]Pursuant to USSG § 5K1.1, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." In the Commentary designated as an Application Note to § 5K1.1, the Guidelines provide that "substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence." USSG §5K1.1, comment. (n.1).

the Guidelines of forty-six to fifty-seven months' imprisonment. Additionally, as the PSR noted, the § 924(c) (use of a firearm) and the § 844(h) (use of an explosive) each carried a statutory minimum ten-year prison term, to be served consecutively to any other sentences imposed.[2] Thus, Tucker faced a possible sentence totaling 286 to 297 months, if the two consecutive statutory minimum terms of ten years were imposed consecutively to the advisory Guideline sentence of forty-six to fifty-seven years.

Prior to sentencing, the government did file a § 5K1.1 motion, based upon Tucker's substantial assistance, thereby allowing the district court to sentence below the twenty-year statutory minimum. At sentencing, the government recommended a total term of fifteen years' imprisonment for all four counts of conviction. The district court imposed a twelve-year sentence. Tucker appeals, arguing the government breached the plea agreement by recommending a sentence of more than ten years for all four counts.

---

[2]Pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried or possessed." Id. Similarly, 18 U.S.C. § 844(h) provides that:

> the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried.

Id.

## DISCUSSION

"This Court reviews *de novo* the question of whether the government has breached the plea agreement, even when the defendant fails to preserve this objection below." United States v. VanDam, 493 F.3d 1194, 1199 (10th Cir. 2007). "General principles of contract law define the content and scope of the government's obligations under a plea agreement." Id. "We thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." Id. We must "construe all ambiguities against the government, to the extent it is the drafting party." Id. Finally, "[w]e evaluate the record as a whole to ascertain whether the government complied with its promise." Id.

The plea agreement in this case specifically acknowledged that count II of the indictment (using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)) carried a minimum mandatory sentence of ten years, to run consecutively to any other sentence imposed. It further specifically acknowledged that count V of the indictment (using an explosive to commit a felony, in violation of 18 U.S.C. § 844(h)(1) and (2)) carried a ten-year sentence, in addition to any sentence imposed for the underlying felony.[3]

_____

[3]The plea agreement did not make it clear that, as § 844(h) specifically provides, the ten-year term is not supposed to "run concurrently with any other
(continued...)

As indicated, in exchange for Tucker's guilty pleas to the four counts, the government agreed to recommend a two- or three-level reduction for acceptance of responsibility. Additionally, and of particular importance to this case, the government further agreed to "[r]ecommend the ten (10) year minimum mandatory consecutive sentence as provided for pursuant to 18 U.S.C. § 924(c)." Statement at ¶ 12(B)(2). The government also agreed to dismiss two of the counts in the six-count indictment and to move for a Rule 35 reduction in sentence "after the defendant has been sentenced and after he has provided truthful information and/or testimony regarding the bank robberies, specifically the Grand Junction case." Id. at ¶ 12(B)(4). Finally, in addition to agreeing not to indict Tucker's wife, the government agreed to evaluate whether to file a motion for a §5K1.1 downward departure based on Tucker's substantial assistance, although the government agreed that "in the event that the Government deems that a § 5K1.1 departure is not appropriate and does not make a motion for downward departure it will **NOT** be grounds for the defendant to withdraw his plea of guilty." Id. at ¶ 12(B)(5).

Pointing to the sentence in the plea agreement where the government agreed to recommend the ten-year "minimum mandatory consecutive sentence as provided pursuant to 18 U.S.C. § 924(c)," Tucker argues the plain language of the

[3](...continued)
term of imprisonment including that imposed for the felony for which the explosive was used or carried." 18 U.S.C. § 844(h) (emphasis added).

plea agreement demonstrates that the government agreed to recommend a total sentence of ten years on all counts. He further argues that, given his lack of sophistication, that was his understanding of the government's promise when he signed the plea agreement. Thus, he argues, the government breached the terms of the plea agreement when, at sentencing, it recommended a fifteen-year sentence.

To resolve this issue under our precedents as stated above, we examine the language of the plea agreement in order to identify "both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." VanDam, 493 F.3d at 1199. We start with the language of the plea agreement.

The plea agreement contains the government's commitment to recommend the "minimum mandatory consecutive sentence as provided pursuant to § 924(c)." By its plain terms, the agreement gave notice to Tucker that the ten-year sentence recommendation related to the § 924(c) count, and that it was consecutive to any other sentence imposed. Tucker argues it implicitly conveyed the commitment that the government would not recommend any *other* sentence beyond the ten-year sentence. We do not agree with Tucker that the plea agreement contained that implicit commitment. Its plain language simply does not support such a construction—it specifically related to only one of the four counts for which Tucker would be sentenced, and it indicated it would be consecutive to any other

-7-

sentence. There would be no reason to refer to the ten-year sentence as "consecutive" if it was the only sentence the government was permitted to recommend. Nor would it make sense to specifically reference § 924(c), if the government's commitment actually related to all four counts of conviction. Thus, the government's silence on any sentencing recommendation on the remaining three counts does not, in our view, constitute an agreement to not recommend any sentence on any of those other counts.

Further, we must "'evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea.'" United States v. Rodriguez-Delma, 456 F.3d 1246, 1250 (10th Cir. 2006) (quoting United States v. Guzman, 318 F.3d 1191, 1195-96 (10th Cir. 2003)), cert. denied, 127 S. Ct. 1338 (2007). We conduct our analysis in light of the entire record. See id. at 1251 (finding no breach of plea agreement after "consideration of the entire record"). We begin our examination of the record by considering what occurred, and what representations were made by the government concerning its sentencing recommendation, at the change of plea hearing in which Tucker pled guilty in accordance with the plea agreement.

In the change of plea hearing, the district court began by reviewing the plea agreement. It initially noted that the plea agreement did not make it clear that the ten-year sentence for count V, using an explosive to commit a felony, was a mandatory minimum to be imposed consecutively to any sentence for the

underlying felony. This led to the district court's express statement to Tucker as follows:

> [T]o summarize, . . . count one charges you with armed bank robbery and it carries a maximum penalty of 25 years. It could be much lower than that. Count two charges you with using and carrying a firearm in relation to a crime of violence and carries a minimum mandatory sentence of ten years. That is above and on top of and in addition to and consecutive to whatever you get for the armed bank robbery, and then you have in count five this crime charging you with using an explosive to commit a felony, and that has an additional mandatory minimum requirement of at least ten years.

Tr. of Change of Plea at 6, R. Vol. VII. This, in turn, led to Tucker's counsel asking that the district court clarify for Tucker whether the ten-year sentence for using the explosive would have to run consecutively to the ten-year sentence for carrying a firearm, or was it possible for them to run concurrently. After the district court expressed dismay that the parties had not clarified everything in the plea agreement, the court informed Tucker:

> I don't have any discretion for the gun charge, and then another ten years mandatory for the explosives charge. I think you are probably looking at 20 years mandatory plus whatever you get on the bank robbery. That is my guess just based on many sentences in the past. I don't know. I think that is a pretty important thing for you to have straight before you enter a plea of guilty.

Id. at 10.

Government counsel subsequently informed the court that a USSG §5K1.1 motion to depart downward based on substantial assistance would be filed, which led to Tucker himself asking the district court the following: "given the nature of

the mandatory ten years and the minimum mandatory, how much discretion do you have with those two given the government motions to go below them?" Id. at 11. The court responded, "[O]nce the 5K1.1 is filed by the prosecutor, I can fall all the way to the bottom." Id.

After further colloquy, the district court reminded Tucker that, should the government not file a § 5K1.1 motion for downward departure, he could not "come back in here and set aside the plea that [he] ha[d] entered today." Id. at 27. Tucker indicated he understood. From our review of the record, there was no discussion at all at the change of plea hearing concerning a sentencing recommendation by the government.

The government then filed, as it had indicated it would, a USSG §5K1.1 motion for a downward departure based upon Tucker's substantial assistance. In that motion, the government stated as follows:

> It is the motion of the Government that the defendant receives no additional sentence for Count I, Armed Bank Robbery and Count VI, Bank Robbery. The defendant must currently serve a minimum mandatory ten-year sentence for Counts II and IV. Based upon the defendant's assistance in the investigation of several cases . . . where the defendant has identified several suspects. Although the information provided by the defendant has not led to any arrests or prosecutions the defendant has provided said information. . . . Pursuant to the Sentencing Guidelines . . . the defendant's total offense level is 23, with a criminal history category of I resulting in a range of 46-57 months. Additionally, the defendant must serve minimum mandatory terms of 120 months, in Counts II and V by statute. A downward departure requesting no additional sentence on Counts I and VI would have no impact on the statutory sentence as required in Counts II and V.

Gov.'s Mot. for Downward Departure Pursuant to USSG §5K1.1 at 1-2, R. Vol. III (emphasis added). Thus, the government represented that it would not recommend any additional sentence beyond that required under the two mandatory statutory ten-year provisions for possessing the firearm and the explosive. We find no other representations by the government regarding sentencing anywhere in the record.

From that review of the record, we must assess Tucker's "reasonable understanding," VanDam, 493 F.3d at 1199, of the government's promise in the plea agreement to recommend a ten-year "minimum mandatory consecutive sentence as provided for pursuant to . . . § 924(c)." Statement at ¶ 12(B)(2). In our view, Tucker's questions at the change of plea proceeding indicated he was hardly unsophisticated, and, indeed, indicated that he understood the sentencing options available to the court.[4] Further, the court's comments at the change of

_____

[4]At one point, the following exchange occurred:

MR. TUCKER: We are stipulating to a 5K1.1 downward departure, and –
THE COURT: You are?
MR. TUCKER: Yes, and a Rule 35 motion from the government either pre- or post-sentence.
THE COURT: Are you the lawyer or is he?
MR. TUCKER: I have read every legal book they have.
THE COURT: How long has this been going on?
MR. TUCKER: Two years.
THE COURT: You could be in your third year through law school.
MR. TUCKER: I'm sure trying.

(continued...)

plea proceeding conveyed to Tucker that he faced a substantial sentence, including mandatory statutory sentences totaling twenty years, which *could* be reduced depending on the degree of his assistance to the government. Thus, as the district court informed Tucker, if a successful §5K1.1 motion was filed, the court could depart below the statutory mandatory ten-year terms for the firearms and explosives charges. In that context, the government's recommendation in the plea agreement that Tucker serve the ten-year minimum mandatory sentence for the § 924(c) conviction was meaningful—the government, in other words, recommended that the district court should not depart below that ten-year sentence, even though, following the §5K1.1 motion, it would have discretion to do so. However, nowhere did the government agree to recommend a total sentence of ten years for all counts, and we discern no indication that Tucker was anything other than completely aware of what sentencing prospects he faced, and completely aware that, depending on the extent of his §5K1.1 substantial assistance, his sentence could drop to some indeterminate level below the otherwise-applicable two ten-year statutory mandatory sentences.

We therefore conclude that Tucker reasonably understood that the government would recommend that he serve ten years for the § 924(c) count, but that there was a possibility of a longer sentence, depending primarily on how the

---

[4](...continued)
Tr. of Change of Plea at 10-11, R. Vol. VII.

§5K1.1 motion developed. While the plea agreement was perhaps not a model of clarity, the district court adroitly clarified any confusion and ensured that Tucker understood the sentencing ranges he faced. Moreover, there was no ambiguity as to the government's sentencing recommendation. And, the government's position remained consistent throughout—from the plea agreement, where it agreed to recommend ten years for the § 924(c) notwithstanding the possibility that the district court could sentence beneath any applicable mandatory statutory sentence if a §5K1.1 motion was filed; through the change of plea hearing, where Tucker was informed that the statutory terms, including the § 924(c) term, would apply unless a successful §5K1.1 motion permitted the district court to sentence to a lower term; through the §5K1.1 motion itself, where the government moved for no further sentence beyond the statutory terms, including the § 924(c) ten-year term.

Subsequently, at sentencing, the government explained its position on sentencing as follows:

> I would ask the Court to focus on the nature and circumstances of the offenses. It is true that Mr. Tucker has provided some information to the government. Some of the information was quite good, and most recently I really thought that we could help Mr. Tucker even more, except the prosecutors in the case that he provided information on decided he just had too much liability with them in his testimony and chose not to use him based upon that and because of this case. . . .
>
> Judge, he is facing roughly 24 years in prison with the minimum mandatories. I still believe that a significant sentence should be imposed for a couple of reasons. The nature and

circumstances of the case, and they are most egregious, . . . [and] most recently . . . the defendant's motions before this Court where he seems to minimize his role in these cases significantly.

. . .

The factors under 3553 I think will be met if the Court were to impose a 15-year sentence.

Tr. of Sentencing at 9-10, R. Vol. VIII. Government counsel explained that the government's additional reason for recommending the fifteen-year sentence was because Tucker's co-defendants, Hansen and Bingham, both cooperated and received ten-year sentences, whereas "Mr. Tucker has not cooperated to that degree, at least not involving this particular case." Id. at 12.

The district court ultimately sentenced Tucker to twelve years, and explained that the court felt that sentence was "consistent" with the sentences imposed on Hansen and Bingham:

> I do think it is worth a couple of extra years for your lack of coming forward, and especially with the generosity of the government with the substantial assistance motion that they have made. I could sit here and very easily in this case have decided not to grant any departure based on that motion. I frankly could make a very good, strong position that you have not rendered substantial assistance.
>
> I am troubled by the level of animosity and hatred and vitriol that was passed from the family of the defendant to law enforcement including you, Mr. Tucker. You stated the authorities used every means to obtain a guilty plea. They threatened to indict my wife and further jeopardize my children. Those kinds of outrageous comments – again, in many ways the best thing you could have done was plead guilty in this case.

Id. at 17.

After carefully reviewing the entire record, we conclude that the government did not breach the plea agreement when it recommended a fifteen-year sentence.

## CONCLUSION

For the foregoing reasons, the sentence is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge