**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1613
_____

UNITED STATES OF AMERICA,

v.

LASHAUMBA O. RANDOLPH,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:18-cr-00257-002)
U.S. District Judge: Honorable J. Nicholas Ranjan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 29, 2025
_____

Before: SHWARTZ, MATEY, and SCIRICA, <u>Circuit Judges</u>.

(Filed: September 30, 2025)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Lashaumba Randolph appeals his conviction for using fire in the commission of wire fraud. Because there is sufficient evidence to support his conviction, we will affirm.

I

A grand jury indicted Randolph for, among other things, wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and use of fire in the commission of that fraud, in violation of 18 U.S.C. §§ 844(h)(1) and 2.[1] These charges arose out of an insurance claim Randolph filed for fire damage to a stolen Chevrolet Camaro he claimed to own.[2]

During a bench trial, witnesses identified the Camaro as a stolen vehicle that Randoph claimed to own and had insured. Specifically, a police officer testified that he found the Camaro damaged and abandoned on the side of a road and that Randolph arrived, introduced himself as the owner, and told the police officer that a woman, whom Randolph later identified as Denise Linnen, crashed the car. According to the officer, Randolph was otherwise evasive in answering the officer's questions. Linnen testified that she had never been inside the Camaro. She also testified that a man named "Black" drove the Camaro from Georgia to Pennsylvania in a convoy of several vehicles and that Randolph was a passenger in one of those vehicles.

The Camaro was towed to a yard where it remained before Randolph had it

---

[1] One who aids or induces another to commit an offense against the United States, or causes such an offense to be committed, may be punished for said offense. 18 U.S.C. § 2.

[2] Randolph was convicted on multiple counts of wire fraud and use of fire related to insurance claims he filed on multiple cars, but he appeals only his § 844(h)(1) conviction related to the Camaro. We discuss trial testimony related to other cars insofar as it is circumstantial evidence relevant to the conviction on appeal.

transferred to a repair shop whose employees unsuccessfully tried to contact Randolph to authorize repairs. Randolph did not file a claim with the Camaro's insurer during this time. Thereafter, the Camaro sustained damage in a fire that was intentionally lit. Randolph then filed an insurance claim for the vehicle's value.[3]

Evidence was adduced that another stolen vehicle Randolph claimed to own, an Acura MDX, was purportedly involved in an accident with a Cadillac Escalade the same night the Camaro was found, and both the MDX and Escalade also burned in intentionally set fires.[4] Randolph filed an insurance claim on the MDX after the fire. When Randolph's insurer confronted him about the coincidence, Randolph acknowledged it was "weird as hell" but was generally evasive. App. Vol. II 413.

The District Court found Randolph guilty of wire fraud and violating § 844(h)(1) with respect to the Camaro. The Court reasoned that Randolph's evasiveness with the police, sending the Camaro to an auto shop where it caught fire, and filing of an insurance claim only after the fire proved that he "devised a scheme to defraud [his insurer]," Supp. App. 56-57, and he was guilty of violating § 844(h)(1).

Randolph appeals.

---

[3] The claim was denied because Randolph did not provide an oral examination or documents the insurer requested.

[4] A witness aware of the scheme to file a false insurance claim on the Escalade testified that he saw "Black," who was known to intentionally "crash [] car[s]," drive the Camaro between Ohio and Georgia. App. Vol. II 299.

II[5]

An individual who "uses fire . . . to commit any felony which may be prosecuted in a court of the United States" is subject to a ten-year term of imprisonment, in addition to the punishment imposed for the underlying offense. 18 U.S.C. § 844(h)(1). Here, the underlying offense is wire fraud, so to secure a conviction under § 844(h)(1), the Government must prove that Randolph intentionally used or aided or caused the use of fire to commit wire fraud. See United States v. Colvin, 353 F.3d 569, 576-77 (7th Cir. 2003) (upholding jury instructions in § 844(h)(1) prosecution requiring jury to find defendant "intentionally used fire to commit a federal felony" to convict him). Randolph does not challenge his wire fraud conviction, but rather argues that fire was not "used" to commit the fraud within the meaning of § 844(h)(1).

Section 844(h)(1) does not define "use fire" and therefore "we construe it in accordance with its ordinary meaning." United States v. Husmann, 765 F.3d 169, 173 (3d Cir. 2014) (internal quotation marks and citation omitted); see also United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008) (approving reference to legal and general dictionaries "to ascertain the ordinary meaning of words."). "Use" means "to employ" or

---

[5] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over questions of statutory interpretation. United States v. Hodge, 948 F.3d 160, 162 (3d Cir. 2020). "We review a sufficiency challenge de novo. When deciding such a challenge, we apply a particularly deferential standard of review. We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. We do not weigh evidence or determine the credibility of witnesses in making this determination." United States v. Hendrickson, 949 F.3d 95, 97 n.2 (3d Cir. 2020) (internal citations, alteration, and quotation marks omitted).

"[t]o make use of," Use, Black's Law Dictionary (5th ed. 1979), or to "serve for a purpose," The Concise Oxford Dictionary of Current English 1182 (7th ed. 1982) (defining "use" as to "cause to act or serve for a purpose" or to "avail oneself of"); see also United States v. Ruiz, 105 F.3d 1492, 1503-04 (1st Cir. 1997) (citations omitted) (defining "use" in § 844(h)(1) as "'[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of'").[6]

Our sister courts have concluded that "uses fire" under § 844(h)(1) occurs where the fire is integral to the commission of the predicate felony. See, e.g., United States v. Desposito, 704 F.3d 221, 227 (2d Cir. 2013) (holding that bank robber who set a fire to distract police responders "used" fire under § 844(h)(1) as the fire "was an integral part of [the robbery] scheme"). Relevant here, courts have held that the intentional burning of property to facilitate the filing of a fraudulent insurance claim is a "use" of fire under § 844(h)(1) where it "constitutes the means by which the individual attempts to create the appearance of legitimate loss of an insured item." United States v. Zendeli, 180 F.3d 879, 885 (7th Cir. 1999); see also United States v. Ihmoud, 454 F.3d 887, 890-91 (8th Cir. 2006); United States v. McAuliffe, 490 F.3d 526, 535 (6th Cir. 2007).

The evidence reflects that Randolph "used" fire to commit fraud within the meaning of § 844(h)(1), as the use of fire was integral to his commission of wire fraud.

---

[6] We use dictionaries in effect at the time of the statute's enactment to identify the meaning of its words. See United States v. Adair, 38 F.4th 341, 350-51 (3d Cir. 2022) (citing cases). Because the words "uses fire" were added in 1982, Anti-Arson Act of 1982, Pub. L. No. 97–298, § 2(b), 96 Stat. 1319 (1982), we use dictionaries from that period.

Cf. Desposito, 704 F.3d at 227. First, Randolph claimed to own and insured the stolen Camaro and, hence, would have profited from an insurance payout on the vehicle. Second, Randolph responded when the car was found and facilitated its removal to a tow yard and then a repair shop, yet failed to respond to the repair shop's calls, suggesting he had no intention to fix the car but rather was waiting for it to be burned and thus become a total loss. Third, Randolph filed an insurance claim seeking "the value of the vehicle" only after the Camaro was seriously damaged in a fire and thereby maximized his payout. Fourth, when he made his insurance claim, he was evasive and declined to provide the requested information. Fifth, Linnen's testimony that Randolph traveled with the Camaro in a group of vehicles from Georgia to Pennsylvania further connects him to the damaged vehicle. Sixth, Linnen's testimony that she had never driven the car contradicted what Randolph told the police, and this contradiction provides grounds to disbelieve the rest of Randolph's statements to the police and his insurer. Seventh, Randolph filed an insurance claim on another vehicle he owned, the MDX, after it was purportedly damaged in a separate incident the same night as the Camaro and burned in an intentionally lit fire at another auto repair shop in the same way as the Camaro. The Escalade, which had allegedly been involved in the purported accident with the MDX, was also burned in an intentionally lit fire at the same auto shop where the MDX burned. A factfinder could reasonably find Randolph's connection to this sequence of events and his role in them were "too strong to be dismissed as mere coincidences." United States v. Allard, 240 F.2d 840, 841 (3d Cir. 1957) (per curiam).

Drawing all inferences in the light most favorable to the Government, as we must, a rational factfinder could conclude beyond a reasonable doubt that Randolph intentionally "used fire" or induced its use to destroy the Camaro to facilitate his fraudulent insurance claim.  See United States v. Hendrickson, 949 F.3d 95, 97 n.2 (3d Cir. 2020).  Thus, there was sufficient evidence to sustain Randolph's § 844(h)(1) conviction.

III

For the foregoing reasons, we will affirm.