10-562-cr
United States v. Tzolov (Butler)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: December 7, 2010                    Decided: June 15, 2011)

Docket Nos. 10-562-cr (Lead) 10-754-cr (XAP)

_____

UNITED STATES OF AMERICA,

*Appellee-Cross-Appellant*,

v.

JULIAN TZOLOV,

*Defendant*,

ERIC BUTLER,

*Defendant-Appellant-Cross-Appellee*.*

Before: FEINBERG, B.D. PARKER, and WESLEY, *Circuit Judges*.

_____

Defendant-Appellant Eric Butler appeals from a judgment of conviction in the United States District Court for the Eastern District of New York (Weinstein, *J.*) for securities fraud and conspiracy to commit securities and wire fraud. *See* 15 U.S.C. §§ 78j(b), 78ff; 18 U.S.C. §§ 371, 1349. Butler argues, among other things, that venue was not proper in the Eastern District of New York. We conclude that venue in the Eastern District was proper for the conspiracy counts, but not for the substantive securities fraud count.

AFFIRMED in part and REVERSED and REMANDED in part.

_____

* Docket Number 10-754 was closed by stipulation filed on September 24, 2010.

STEVEN F. MOLO, EDWARD F. DANIELS, New York, NY (Robert K. Kry, Washington, DC, *on the brief*), Molo Lamken LLP; Paul T. Weinstein, Emmet, Marvin & Martin, LLP, New York, NY, *for Appellant*.

JOHN P. NOWAK (Daniel A. Spector, Jo Ann M. Navickas; *on the brief*), Assistant United States Attorney for the Eastern District of New York, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

_____

BARRINGTON D. PARKER, *Circuit Judge*:

Eric Butler appeals from a judgment of conviction in the United States District Court for the Eastern District of New York (Weinstein, *J.*). Butler was convicted of securities fraud and conspiracy to commit securities and wire fraud and was sentenced principally to five years' incarceration.[1] Butler argues, among other things, that venue was not proper in the Eastern District of New York.[2] For the reasons discussed below, we conclude that venue as to the substantive securities fraud count was improper. Accordingly, we vacate Butler's conviction as to that count. We affirm as to the remaining counts and remand for resentencing.

**BACKGROUND**

This case arises out of the failure of the auction rate securities ("ARS") market.

---

[1] Specifically, Butler was convicted of one count of securities fraud (Count Two), in violation of 15 U.S.C. §§ 78j(b) and 78ff; one count of conspiracy to commit securities fraud (Count One), in violation of 18 U.S.C. § 371; and one count of conspiracy to commit wire fraud (Count Three), in violation of 18 U.S.C. § 1349.

[2] On appeal, Butler raises a number of other issues, which are resolved in a separate summary order.

2

At the relevant time, ARS were securities composed of long-term, typically high-grade, debt obligations, such as student loans, mortgages, municipal bonds, corporate debt and preferred stock issued by closed-end mutual funds. Although ARS are structured as long-term fixed income securities and usually issued with maturities of thirty years, ARS were traded through auctions on short-term cycles, generally every 7, 14, 28 or 35 days. At the end of the cycle, an ARS holder could either sell the security for new paper through an auction or hold the security for another cycle. Thus, under normal market conditions, an investor could exchange his security for cash potentially every week or month. Because ARS auctions provided short-term liquidity to asset-backed securities with long-term maturity dates, they effectively transformed long-term bonds into investment vehicles akin to, but paying more than, money market funds or similar short-term instruments and, consequently, attracted investors interested in additional basis points and liquidity.

In the unlikely possibility that an investor decided simply to hold his ARS, he would receive a return of principal when the underlying security matured, often many years later. The federal government guaranteed against default up to 98 percent of the underlying principal of ARS that were backed by student loans. However, the guarantee did not protect investors against failures in the auction market. The other types of ARS had no such government guarantee. All the ARS at issue in this case had AAA credit ratings and were considered "safe" in that prior to 2007 there had not been a failure of a AAA-rated ARS auction.

Butler and his co-defendant Julian Tzolov worked in Credit Suisse's Corporate Investment Management group and worked from its Manhattan offices. The clients they

serviced included large, sophisticated corporate clients, such as Glaxo Smith Kline, Roche International and ST Microelectronics, who invested in short-term, fixed-income vehicles.

Among other investment vehicles, Butler and Tzolov offered their clients ARS. In doing so, Butler and Tzolov would initially make email and telephone presentations to prospective clients. If a prospective client expressed an interest, Butler and Tzolov would typically follow up with in-person meetings at that client's office. Because most of the investors were located outside New York, Butler and Tzolov frequently flew out of John F. Kennedy Airport located in the Eastern District of New York to attend these meetings.

At trial, the government proved that Butler and Tzolov made false statements to the investors about the types of securities purchased on their behalf. Government witnesses testified that they instructed Butler and Tzolov only to purchase ARS backed by government guaranteed student loans, yet contrary to these instructions, Butler and Tzolov purchased ARS that were backed by debt instruments that did not carry government guarantees. After investors agreed to purchase a security, Butler and Tzolov would send them email confirmations and Credit Suisse would send them monthly account statements listing the ARS purchased. In a number of those email confirmations, the government's proof showed, Butler and Tzolov falsified the names of the securities to make it appear as though they were student-loan-backed ARS. The names were, however, correctly identified in the Credit Suisse statements. The government also presented evidence that during the time period in question, some of the investors called Butler to ask questions concerning their investments, and Butler falsely stated that he was investing in student-loan-backed ARS.

The auctions for the non-student-loan ARS began to fail in August 2007. This meant that investors could no longer resell their non-student-loan-backed securities through the monthly auctions. Instead, investors who purchased ARS as short-term investments were forced to hold them until liquidity returned to the market or until the principal matured. While this failure did not signal a default in the underlying debt instrument, the absence of liquidity was a major blow to purchasers who typically looked to ARS exclusively as short-term, highly liquid investments.

As the market failed, many of the investors were informed by Butler and other Credit Suisse employees that the securities they had purchased were not backed by student loans. Consequently, at the time of the market failure, many clients were saddled with hundreds of millions of dollars in ARS that were not backed by student loans and that could not be rolled over at the auctions. From August 2007 through the date of this appeal, no successful auction has occurred for non-student-loan-backed securities. The auctions for the student-loan-backed ARS continued to function until February 2008, when they also failed.

In April 2009, the government indicted Butler, charging him with securities fraud, conspiracy to commit securities fraud, and conspiracy to commit wire fraud. In a pretrial motion, Butler moved to dismiss all counts for lack of venue. Tzolov pled guilty and testified for the government at Butler's trial. Butler proceeded to trial and ultimately was convicted on all counts. Following his conviction, Butler moved for a judgment of acquittal arguing, among other things, that the government failed to prove that venue in the Eastern District was proper. The district court denied Butler's motion. This appeal followed.

**DISCUSSION**

Both the Sixth Amendment and Fed. R. Crim. P. 18 require that a defendant be tried in the district where his crime was "committed." U.S. Const. amend. IV; Fed. R. Crim. P. 18; *see also* U.S. Const. art. iii, § 2, cl. 3. When a federal statute defining an offense does not specify how to determine where the crime was committed, "[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). Venue is proper only where the acts constituting the offense—the crime's "essential conduct elements"—took place. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999).

The government bears the burden of proving venue. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence. *See United States v. Smith*, 198 F.3d 377, 384 (2d Cir. 1999). We review the sufficiency of the evidence as to venue in the light most favorable to the government, crediting "every inference that could have been drawn in its favor." *United States v. Rosa*, 17 F.3d 1531, 1542 (2d Cir. 1994). Where, as here, the facts are not in dispute, venue challenges raise questions of law, which we review *de novo*. *See United States v. Svoboda*, 347 F.3d 471, 482 (2d Cir. 2003).

As to each count, the jury found, by a preponderance of the evidence, that venue was proper in the Eastern District of New York. Butler challenges the sufficiency of the evidence supporting these findings. Because "venue must be proper with respect to each count," we separately review each count. *Beech-Nut*, 871 F.2d at 1188.

6

## A. Securities Fraud (Count Two)

Count Two charged Butler with securities fraud under 15 U.S.C. §§ 78j(b) and 78ff, which has its own specific venue provision: "Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. The government's sole basis for venue in the Eastern District on this substantive count was that Butler and Tzolov traveled through JFK airport on their way to meet with the investors. According to the government, these flights are sufficient to establish venue because, under *United States v. Svoboda*, 347 F.3d 471 (2d Cir. 2003), the flights were "an important part of furthering the [fraudulent] scheme."

We disagree. We have little difficulty concluding that the government failed to offer competent proof that any "act or transaction *constituting* the [securities fraud] violation occurred" in the Eastern District. *See* 15 U.S.C. § 78aa (emphasis added). Butler did not transmit any false or misleading information into or out of the Eastern District. All the fraudulent statements that were part of the government's proof, whether made by Butler or Tzolov, were made in telephone calls or emails from Credit Suisse's Madison Avenue offices located in the Southern District or in meetings with investors. None of this activity occurred in the Eastern District.

Nor did Butler commit securities fraud by boarding a plane in the Eastern District. At most, catching flights from the Eastern District to meetings where Butler made fraudulent statements were preparatory acts. They were not acts "constituting" the violation. We have cautioned that "venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." *Beech-Nut*, 871 F.2d at 1190. That

7

is all we have here.  In other words, going to Kennedy airport and boarding flights to meetings with investors were not a constitutive part of the substantive securities fraud offense with which Butler was charged.  *See United States v. Ramirez*, 420 F.3d 134, 141-142 (2d Cir. 2005) (vacating Appellant's conviction for visa fraud because "venue is proper only where a crime is 'committed,' and *Beech-Nut* precludes considering preparatory acts in determining the *locus delicti*"); *id.* (finding that venue did not lay in the Southern District for mail fraud when the scheme to defraud originated in the Southern District but the mailing occurred in another district because that would mean that "a defendant who devised a scheme to defraud while driving across the country could be prosecuted in virtually any venue through which he passed"); *United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004) (finding venue improper where actions in the Southern District of New York were "anterior and remote" to the criminal conduct); *United States v. Bozza*, 365 F.2d 206, 220-21 (2d Cir. 1966) (finding venue improper in a district in which a telephone call was made to arrange for the receipt of stolen goods, but the receipt of property itself occurred in another district).

The government's reliance on *Svoboda* is misplaced.  In *Svoboda*, we stated that "venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue [and it does]."  347 F.3d at 483.  However, *Svoboda* does not control here.[3]  In *Svoboda* we were not faced with the question of whether preparatory acts alone

---

[3]  Indeed, as discussed above, Butler was tried under a statute governed by a specific venue provision.  Even setting aside the factual distinctions between the two cases, therefore, *Svoboda* cannot assist the government in its argument on this point.

could establish venue. Indeed, *Svoboda* did not involve preparatory acts at all. The act that established venue and that occurred "in furtherance" of the crime charged—the execution of a trade—constituted an essential element of the crime. *See id.* at 485. The only question before us in *Svoboda* was whether venue could lie in a district when the defendant did not necessarily intend that the criminal conduct take place in that district. *Id.* at 482-84. Here, by contrast, no conduct that constituted the offense took place in the Eastern District. Accordingly, nothing in *Svoboda* calls into question the principle that preparatory acts alone are insufficient to establish venue. For these reasons, we hold that venue in the Eastern District was not proper as to Count Two.

**B.** **Conspiracy to Commit Securities Fraud (Count One) and Conspiracy to Commit Wire Fraud (Count Three)**

The conspiracy charges, however, require a different analysis. For them, "venue is proper in any district in which 'an overt act in furtherance of the conspiracy was committed.'" *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008) (quoting *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994)). An overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy. The act need not be unlawful; it can be any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy. *See United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007); *see also Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975).

The government argues that because Butler's use of Kennedy airport to attend meetings with the investors were overt acts in furtherance of the conspiracies, venue in the Eastern District

was proper with respect to those counts.[4] We agree. A reasonable jury could have concluded that Butler and Tzolov's travel through the Eastern District was in furtherance of the conspiracy because, had they not done so, the face-to-face meetings with potential investors, which was a regular part of their fraudulent scheme, would not have occurred.

This conclusion is consistent with the principle in our decisions that venue for a conspiracy may be laid in a district through which conspirators passed in order to commit the underlying offense. *See, e.g.*, *United States v. Duque*, 123 F. App'x 447, 449 (2d Cir. 2005) (summary order) (finding evidence the government presented that defendant "flew from JFK airport to Aruba via a flight path over Jamaica Bay, a body of water in Queens, New York and within the Southern District" sufficient to establish venue in the Southern District for conspiracy to distribute heroin charge (citing *United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987)); *United States v. Nathan*, 476 F.2d 456, 461-62 (2d Cir. 1973) (holding that "the use by the conspirators of [JFK] for flights to Miami and Detroit to obtain or sell narcotics was a sufficient basis for venue to lie in the Eastern District"); *see also United States v. Schoor*, 597 F.2d 1303, 1308 (9th Cir. 1979) (finding that reentry by defendant into the United States at San Francisco airport to catch a connecting flight to Miami, where he intended to pick up radios containing heroin, was sufficient to constitute an overt act committed in course of alleged conspiracy so that venue was proper); *United States v. Williams*, 536 F.2d 810, 812 (9th Cir. 1976) (coconspirator's flight over the

---

[4] The government also argues that Butler waived any objection to venue for the conspiracy counts because he did not raise the issue in his motion for acquittal. Because we find that venue was proper for the conspiracy counts, we need not reach the government's waiver argument. *See United States v. Leong*, 536 F.2d 993, 996 (2d Cir. 1976).

10

Southern District of California, while en route to obtain marijuana, was sufficient to support venue there).

Relying on *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978), Butler argues that venue was not proper in the Eastern District for the conspiracy counts because the overt act must at least "manifest 'that the conspiracy is at work,'" and that "[u]sing an airport to attend business meetings did not 'manifest' that any conspiracy was 'at work'" because he "would have taken the same trips to sell ARS whether or not [he] made any misstatements." However, contrary to Butler's assertions, the act of going to the airport in the Eastern District, which allowed Butler and Tzolov to make the false statements to the investors in person, was sufficient to show that the conspiracy was at work and not "a project still resting solely in the[ir] minds." *Yates*, 354 U.S. at 334.

We also reject Butler's argument that his flights out of JFK do not satisfy the "substantial contacts" test set forth in *United States v. Reed*, which takes into account such factors as "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." 773 F.2d 477, 481 (2d Cir. 1985). "Though *Reed* refers to a 'substantial contacts rule' for determining venue . . . it is clear that the [court] regarded the locale of the defendant's acts as a sufficient basis for establishing venue." *Naranjo*, 14 F.3d at 147. In *Reed*, we stated that "the alleged criminal acts provide substantial contact with the district." 773 F.2d at 481. We further noted that "[v]irtually all the caselaw designates the site of the defendant's acts as a proper venue" and that "this site may seem fair to defendants at least in the perverse sense of having been freely chosen by them as the place

11

at which the acts were committed." *Id.*; *see also United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (noting that although *Reed*'s substantial contacts test is not a "formal constitutional test, [it] is helpful in determining whether a chosen venue is unfair or prejudicial to a defendant," "especially in those cases where the *defendant*'s acts *did not* take place within the district selected as the venue for trial." (emphasis added)). Here, Butler committed overt acts in furtherance of the conspiracies in the Eastern District. Accordingly, we do not find venue for the conspiracy charges to be unfair or prejudicial.[5]

## CONCLUSION

We AFFIRM Butler's conviction on Counts One and Three and REVERSE his conviction on Count Two. We REMAND for resentencing.

---

[5] Contrary to Butler's assertions, this conclusion is not inconsistent with our statement in *United States v. Royer* that "venue must *not only* involve some activity in the situs district but also satisfy the 'substantial contacts' test of *Reed*." 549 F.3d at 895 (emphasis added). First, it is clear that overt acts committed by a defendant in furtherance of a conspiracy are more than just "some activity in the situs district." Second, our holding today in no way suggests that *Reed*'s substantial contacts test is inapplicable whenever a defendant commits an overt act in furtherance of the conspiracy in the situs district. We simply hold that under *Reed*, Butler's acts are sufficient to establish substantial contacts with a venue. *See Naranjo*, 14 F.3d at 147 (finding that phone calls made in furtherance of a conspiracy alone satisfy *Reed*'s substantial contacts test); *see also Royer*, 549 F.3d at 896 (holding that "defendants' transmission of confidential information . . . in the Eastern District of New York, as well as the acts that a reasonable jury could find were more likely than not taken by the AP site subscribers in the Eastern District . . . are sufficient in themselves" to establish venue for securities fraud and RICO conspiracies).

12