12-0409-cr
*United States v. Abdallah*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand thirteen.

PRESENT:

      GUIDO CALABRESI,
      DEBRA ANN LIVINGSTON,
      GERARD E. LYNCH,
                    *Circuit Judges.*
_____

UNITED STATES OF AMERICA,

                  *Appellee*,

      -v.-                                     No. 12-0409-cr

KAMAL Z. ABDALLAH,

                  *Defendant-Appellant.*
_____

| | |
|---|---|
| For Appellee: | DAVID C. WOLL, JR., (SUSAN CORKERY, *on the brief*), Assistant United States Attorneys, of Counsel *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, New York. |
| For Defendant-Appellant: | ROBERT P. LARUSSO, LaRusso & Conway LLP, Mineola, New York. |

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the district court be **AFFIRMED.**

Defendant-Appellant Kamal Abdallah appeals from a judgment of the United States District Court for the Eastern District of New York (Bianco, *J.*), entered January 6, 2012, denying Abdallah's motion for acquittal and a new trial following his conviction by jury for conspiracy to commit securities and wire fraud in violation of 18 U.S.C. § 1349 (Count One), securities fraud in violation of 18 U.S.C. § 1348 (Count Two), and wire fraud in violation of 18 U.S.C. § 1343 (Count Three). The Superseding Indictment charged that, from approximately June 2009 to August 2009, Abdallah and two others engaged in a scheme to artificially inflate and manipulate the share price of two companies, Universal Property Development & Acquisition Corporation ("UPDV") and Alphatrade, and to profit from the sale of the manipulated stock. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal.

**I.     Venue**

On appeal, Abdallah first argues that we should vacate all three counts of conviction because venue in the Eastern District of New York was improper. We review a district court's ruling on venue *de novo*. *United States v. Geibel*, 369 F.3d 682, 695 (2d Cir. 2004). The government bears the burden of proving venue by a preponderance of the evidence, and "[t]his Court reviews the sufficiency of the evidence as to venue in the light most favorable to the government, crediting every inference that could have been drawn in its favor." *Id.* at 696 (internal quotation marks omitted).

"Both the Sixth Amendment and [Rule] 18 [of the Federal Rules of Criminal Procedure] require that a defendant be tried in the district where his crime was 'committed.'" *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (citing U.S. Const. amend. IV; Fed. R. Crim. P. 18). If a

defendant is charged with multiple counts, venue must be proper for each count. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). "When a federal statute defining an offense does not specify how to determine where the crime was committed, '[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Tzolov*, 642 F.3d at 318 (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)); *see Beech-Nut Nutrition Corp.*, 817 F.2d at 1189 ("[W]e have noted that it is helpful to examine the key verbs used by the statute in defining the offense[.]" (internal quotation marks omitted)). Pursuant to 18 U.S.C. § 3237(a), crimes which are "committed in more than one district" can be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). However, the crime's "essential conduct elements" must have occurred in the district in order for venue to be proper there, *Tzolov*, 642 F.3d at 318 (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999)), and, as a consequence, "venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense," *Beech-Nut Nutrition Corp.*, 871 F.2d at 1190. In order to determine whether venue is proper, this Court applies a "substantial contacts rule," which "takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985).

The government based venue for all three counts on a recorded July 28, 2009 telephone call between government cooperator Eric Seiden in the Eastern District and Abdallah, who was located in Texas. With regard to Count One, the conspiracy charge, the July 28 call was sufficient to establish venue because it was an overt act in furtherance of the conspiracy. *See United States v.*

3

*Smith*, 198 F.3d 377, 382 (2d Cir. 1999). "[A] telephone call placed by a government actor within a district to a conspirator outside the district can establish venue within the district provided the conspirator uses the call to further the conspiracy." *United States v. Rommy*, 506 F.3d 108, 122 (2d Cir. 2007). During the July 28 call, Abdallah told Seiden the stock price of UPDV and Alphatrade, the target price at which he wanted to sell, and the number of shares Seiden should purchase, and confirmed Seiden's 25 percent kickback. Abdallah thus clearly "use[d] the telephone call to further the objectives of the conspiracy." *Id.*

Abdallah asserts for the first time on appeal that the evidence proved two separate conspiracies—a conspiracy to defraud investors and, after July 15, 2009, a conspiracy to defraud brokerage firms—and that at the time of the July 28 call, no conspiracy was extant because Seiden had already been arrested and because Abdallah's other coconspirator, Roger Kainth, was never part of the conspiracy to defraud brokerage firms. This argument fails, first, because "a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance," *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990), and "so long as [the coconspirators] agreed on the essential nature of the plan," *id.* A jury could reasonably infer from the evidence presented at trial that Abdallah, Seiden, and Kainth shared a common purpose of fraudulently creating demand for, and thus increasing the share price of, UPDV and Alphatrade stock. *See United States v. Chavez*, 549 F.3d 119, 125 (2d Cir. 2008) (recognizing that the existence of and membership in a conspiracy may be established through circumstantial evidence). Abdallah's awareness, as of July 15, of Seiden's method of perpetrating the fraud did not create two conspiracies because the essential nature of the scheme remained the same.

Moreover, the district court properly found that the conspiracy was ongoing at the time of the July 28 call. *See United States v. Abdallah*, 840 F. Supp. 2d 584, 600 (E.D.N.Y. 2012). Abdallah continued to take acts in furtherance of the conspiracy through July 28 (and after) by calling and texting Seiden. And although there is no direct evidence that Kainth took any acts in furtherance of the conspiracy after July 10, 2009, a jury could reasonably infer that he remained a member of the conspiracy given his pattern of trading stock in tandem with Abdallah.

Abdallah argues that the July 28 telephone call did not suffice to establish venue for Count Two, which charged substantive securities fraud, because the call was a preparatory act, and did not amount to "conduct constituting the offense." *United States v. Ramirez*, 420 F.3d 134, 140 (2d Cir. 2005) (internal quotation marks omitted). Tracking the statutory language of 18 U.S.C. § 1348, Count Two charged that Abdallah "execute[d] and attempt[ed] to execute a scheme and artifice . . . to defraud persons in connection with the common stock of UPDV." App'x at 59. Since Seiden never actually placed the buy orders he discussed with Abdallah during the July 28 call, we look to the "attempt" language of the offense charged, and ask whether the call constituted a "substantial step" toward the commission of the fraud, or was "mere preparation." *See United States v. Farhane*, 634 F.3d 127, 146-47 (2d Cir. 2011)(internal quotation marks omitted) (discussing the elements of attempt liability). The "substantial step" necessary to prove attempt should be "strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Desposito*, 704 F.3d 221, 231 (2d Cir. 2013) (internal quotation marks omitted), but ultimately, "[t]here are no bright line rules for determining what actions amount to a 'substantial step,'" *id.* at 232-33, and "[t]he analysis depends on the crime charged and whether the act tended to cause that particular crime to occur," *id.* at 233. Here, given the specific content of the July 28 call, as well as the pattern

5

of conduct the government established at trial—Abdallah would instruct Seiden regarding the target price of UPDV stock and how much to buy, and then Seiden would enter the order—we conclude that the July 28 call was clearly more than a preparatory act.

*United States v. Delvecchio*, 816 F.2d 859 (2d. Cir. 1987), on which Abdallah relies, is not to the contrary. In *Delvecchio*, two drug dealers whose chain of supply had been disrupted by the arrests of other conspirators reached out to a former colleague (by then a government informant) in an effort to establish a new source of supply through the "nephew" of a former supplier of drugs (actually an undercover officer). The defendants became suspicious, however, and failed to appear for the meeting at which the transaction was to be consummated. *Id.* at 861. We held that the acts of the defendants had not proceeded beyond a very preliminary stage of negotiation because they had not satisfied the "essential" requirement that "the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." *Id.* at 862 (quoting *United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980)). Abdallah, in contrast, was not soliciting a new acquaintance to become involved in a criminal plot, nor did he withdraw from his efforts to consummate the plan. By calling Seiden, with whom he and Kainth had already formulated an executed and ongoing scheme to defraud a number of victims over a period of months, and instructing him to put the previously agreed scheme into operation again with a new victim, Abdallah engaged in an overt act that was, in the context of his prior dealings with Seiden, "adapted to, approximat[ed], and . . . in the ordinary and likely course of things w[ould] result in, the commission of the particular crime." *Id.* In this context, the July 28 call strongly corroborates Abdallah's intent to commit securities fraud, and was a "substantial step" toward the commission of the crime.

6

Additionally, we conclude that the Eastern District was the proper venue for Count Three, wire fraud, based on the July 28 call. *See United States v. Kim*, 246 F.3d 186, 192-93 (2d Cir. 2001) (finding venue proper where out-of-district defendant caused wire transmissions into and out of Southern District); *United States v. Gilboe*, 684 F.2d 235, 239 (2d Cir. 1982) (finding that faxes and telephone calls between Hong Kong and Manhattan established venue in Southern District where defendant was not physically located in the district).

Regarding venue, Abdallah also argues that under the "substantial contacts rule," venue was improper in the Eastern District because most of the acts constituting the offense, and all of its effects, occurred in Manhattan, Florida, and Texas. However, while the factors listed in *Reed* are useful guideposts for consideration, they are not mandatory or "mechanical" specifications for a valid venue. *Reed*, 773 F.2d at 481. Where, as here, the "site of the defendant's acts" are multiple and wide-ranging, *id.*, several districts may be appropriate for trial, and there is no requirement that the district selected have more factors weigh in its favor than the others. *See United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008) (noting that where defendants' scheme "defrauded investors throughout the country," they "can hardly complain that their very *modus operandi* subjected them to prosecution in numerous districts, including the Eastern District"). Nor are we persuaded by Abdallah's argument that the government improperly manufactured venue. For all the reasons listed by the district court, *see Abdallah*, 840 F. Supp. 2d at 607, this argument is unavailing.

**2. Constructive Amendment**

Abdallah next claims that the evidence produced at trial constructively amended the Superseding Indictment. Specifically, Abdallah argues the indictment charged a scheme to defraud brokerage houses, but the proof at trial established that Abdallah and Kainth were involved in a different scheme to victimize individual investors. "To prevail on a constructive amendment claim,

a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence . . . which so modif[ies] *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (internal quotation marks omitted). This Court has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992) (internal quotation marks omitted). The "core of criminality" charged in the Superceding Indictment was a "[s]cheme to [d]efraud" from "June 2009 to August 2009" in which Abdallah "agreed with others to create false demand for, and to manipulate the share price of, the common stock of UPDV and Alphatrade." App'x at 31, 35. Although the indictment described how Seiden defrauded brokerage houses, such details are not the "essential elements" of the offenses charged, but the specific means by which the "scheme to defraud" was accomplished. *See D'Amelio*, 683 F.3d at 422 (internal quotation marks omitted). Thus, regardless of whether the proof at trial showed a scheme to defraud individual investors or brokerage houses—and indeed, there was evidence that both occurred— there was no constructive amendment of the indictment.

We have reviewed the rest of Abdallah's arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk