*United States v. Abdullaev, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of February, two thousand nineteen.

PRESENT:   GUIDO CALABRESI,
            JOSÉ A. CABRANES,
            RICHARD C. WESLEY,
                        *Circuit Judges.*

---

UNITED STATES OF AMERICA,

    *Appellee,*

     v.

SHAVKAT ABDULLAEV, AKA STAN,
ALEXANDER POSOBILOV, AKA SASHA,

    *Defendants-Appellants,*

ARC ELECTRONICS, INC., APEX SYSTEM, L.L.C.,
LYUDMILA BAGDIKIAN, AKA MILA, ANASTASIA
DIATLOVA, AKA ANNA, VIKTORIA KLEBANOVA,
SERGEY KLINOV, YURI SAVIN, DMITRIY SHEGUROV,
SEVINJ TAGHIYEVA, SEVA, SVETALINA ZAGON, AKA
ALINA, ALEXANDER FISHENKO,

    *Defendants.*

17-104-cr (L)
17-909-cr (Con)

---

**FOR DEFENDANT-APPELLANT ABDULLAEV:**  Richard B. Lind, New York, NY.

1

**FOR DEFENDANT-APPELLANT POSOBILOV:** STEVE ZISSOU (Randall D. Unger, *on the brief*), Bayside, NY

**FOR APPELLEE:** RICHARD M. TUCKER (Emily Berger, *on the brief*), Assistant United States Attorneys, *for* Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeals from judgments of conviction in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court be and hereby are **AFFIRMED**.

Defendant-Appellant Shavkat Abdullaev ("Abdullaev") appeals from a judgment entered on January 4, 2017 convicting him, following a jury trial, of conspiring to violate the International Emergency Economic Powers Act ("IEEPA") and to commit wire fraud (Count One), as well as substantive IEEPA violations (Counts Five, Six, and Seven). He was sentenced principally to 36 months' imprisonment. On appeal, Abdullaev argues: (1) that there was insufficient evidence to support all of his convictions; (2) that the Government failed to establish that venue was proper in the Eastern District of New York for the substantive IEEPA violations; and (3) that the District Court's venue instruction was erroneous.

Defendant-Appellant Alexander Posobilov ("Posobilov") appeals from a judgment entered on March 30, 2017 convicting him, following a jury trial, of conspiring to violate IEEPA and the Arms Export Control Act ("AECA"), and to commit wire fraud (Count One); substantive IEEPA violations (Counts Two through Eight); a substantive AECA violation (Count Nine); and conspiring to commit money laundering (Count Ten). He was sentenced principally to 135 months' imprisonment. On appeal, Posobilov argues: (1) that there was insufficient evidence to support his conviction on the money laundering conspiracy (Count Ten); (2) that the District Court failed to adequately ascertain whether jurors had been exposed to extraneous information about the case during trial; and (3) that his sentence was procedurally and substantively unreasonable.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

## I. Sufficiency of the Evidence

### A. Law

"We review sufficiency of evidence challenges *de novo*, but defendants face a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (internal quotation marks omitted). "We must view the evidence in the light most favorable to the [G]overnment, crediting every inference that could have been drawn in the [G]overnment's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (internal quotation marks and brackets omitted). "[W]e will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and bracket omitted) (emphasis in original).

### B. Substantive IEEPA Violations

Abdullaev challenges the sufficiency of the evidence underlying his convictions for Counts Five, Six, and Seven—the substantive IEEPA violations. He contends that there was insufficient evidence to establish that he acted "willfully" in facilitating the export of controlled microelectronics to Russia. Specifically, he claims that "he was not aware that he might be doing something illegal," in part because he was making a "paltry salary" at ARC Electronics ("ARC") and had "neither the time, nor responsibility, nor expertise" to determine whether the exports he facilitated required licenses. Abdullaev Br. 22, 25.

To establish a "willful" violation of a statute—or, in this case, an IEEPA-promulgated regulation—"the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998) (internal quotation marks omitted); *see also United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 147 (2d Cir. 2004) (applying the *Bryan* willfulness standard to the IEEPA).

The evidence at trial firmly established that Abdullaev had substantial knowledge of the regulatory regimes governing ARC's operations. As early as 2009, Abdullaev—then an ARC salesperson—would receive emails from suppliers regarding the Export Control Classification Numbers ("ECCNs") for their equipment. Record emails also reflect that Abdullaev would educate his co-workers about export regulations. For example, in May 2009, Abdullaev emailed ARC's CEO, Alexander Fishenko ("Fishenko"), a photocopy of the regulations governing the highly controlled "3A001" ECCN designation. The jury also heard testimony from FBI Special Agent Olga Novosad, who described how Abdullaev was able to provide a detailed explanation of the significance of ECCN numbers—including the restricted "3A001" designation—during his post-arrest interview.

Not only was Abdullaev familiar with these regulations, but he was also practiced in their evasion. As an ARC salesperson, Abdullaev repeatedly provided suppliers with the names of

3

fictitious end users. As shipping manager, he prepared fraudulent export documentation that deliberately misstated the ECCNs. For example, between June 29 and October 2, 2011, Abdullaev received 324 shipping notices from a supplier, 59 of which indicated that the supplier was shipping restricted "3A001" parts to ARC. Yet 78% of the associated export documents prepared by Abdullaev indicated that the parts were "EAR99"[1] and required no license. As for the shipments charged in Counts Six and Seven, Abdullaev personally received two shipping notices from the supplier indicating that the enclosed parts had a restricted ECCN classification. Nevertheless, Abdullaev entered "EAR99" on the documentation for these shipments.[2] In sum, we hold that there was ample evidence from which the jury could conclude that Abdullaev acted with knowledge that his conduct was unlawful when he prepared fraudulent documentation for each charged export.

### C. Conspiracy to Violate IEEPA and to Commit Wire Fraud

Abdullaev further contends that there was insufficient evidence to prove the existence of a "scheme to defraud" ARC's U.S.-based suppliers, as charged in Count One. He claims that the suppliers were not deprived of any "essential element of the bargain," since they were paid for the microelectronics they supplied. *See United States v. Shelleff*, 507 F.3d 82, 108 (2d Cir. 2007).

During trial, representatives from three U.S.-based suppliers testified about how their respective corporate polices prohibit them from selling microelectronic parts to specified foreign countries for military application. To enforce these corporate policies—and as consideration to contract—the suppliers require distributors to provide assurances that the parts are not intended, directly or indirectly, for military use. Suppliers may also require distributors to supply additional information about end users. Thus, in lying about end uses and end users, ARC misrepresented an "essential element of the bargain"—namely, that the parts would not be sold to the Russian government for military application in violation of United States export laws. *See United States v. Schwartz*, 924 F.2d 410, 421 (2d Cir. 1991) ("[T]he fact that [the supplier] was paid for its [product] does not mean that [the supplier] received all it bargained for. In fact, it did not. [The supplier] insisted its product not be exported from the country illegally and defendants' conduct deprived [the supplier] of the right to define the terms for the sale of its property in that way, and cost it, as well, good will because equipment [the supplier], a government contractor, sold was exported illegally.").

---

[1] The designation "EAR99" means that the item is subject to the Export Administration Regulations ("EAR") but does not have a specific ECCN and does not require an export license.

[2] That ARC's own invoices did not reflect ECCN numbers for the enclosed parts is immaterial; Abdullaev had direct knowledge from the forwarded emails that the shipments contained parts with restricted ECCN classifications.

**D. Conspiracy to Commit Money Laundering**

Posobilov contends that there was insufficient evidence to establish that he knowingly engaged in the money laundering conspiracy charged in Count Ten. His argument focuses principally on the fact that he did not have access to ARC's bank accounts. In so arguing, however, he ignores the overwhelming evidence demonstrating his active involvement in the money laundering scheme.

As ARC's manager and procurement director, Posobilov regularly received copies of emails coordinating wire payments from ARC's Russia-based clients. Not only did these emails contain wire transfer information, but they offered advice on how ARC's Russian clients could wire payments without raising red flags. In fact, one of the emails contained an article entitled: "How to Rid an Offshore Company Of The Image Of The Offshore Company." GA 124. Posobilov could also access the "banking deposits" and "accounts receivable" sections of ARC's electronic record-keeping system, which enabled him to see how ARC's Russian clients used shell companies to pay their invoices. Finally, Posobilov served as Director of ARC's corporate shell, "Electrodevices," which ARC used to obtain parts from manufacturers that otherwise refused to supply ARC. In sum, there was ample evidence to support the jury's determination that Posobilov entered into a money laundering conspiracy with Fishenko and others to promote ARC's unlawful operations.

## II. Venue

**A. Law**

"Venue is proper only where the acts constituting the offense—the crime's 'essential conduct elements'—took place." *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (quoting *United States v. Rodriguez–Moreno*, 526 U.S. 275, 280 (1999)). "For each count of an indictment, the [G]overnment bears the burden of proving by a preponderance of the evidence that venue is proper." *United States v. Thompson*, 896 F.3d 155, 171 (2d Cir. 2018).

"When a defendant challenges the propriety of the trial venue after conviction by a jury . . . we review the sufficiency of the evidence as to venue in the light most favorable to the [G]overnment, crediting every inference that could have been drawn in its favor." *Id.* (internal quotation marks omitted). "If the facts are not in dispute, venue challenges raise questions of law, which we review *de novo*." *Id.* (internal quotation marks omitted). Where a defendant fails to object to the substance of a venue instruction, however, we review for plain error. *United States v. Svoboda*, 347 F.3d 471, 484 (2d Cir. 2003).

Conspiracy is a continuing offense. *United States v. Rutigliano*, 790 F.3d 389, 395-96 (2d Cir. 2015). Venue in a continuing offense is proper in any district in which the offense "was begun, continued, or completed." 18 U.S.C. § 3237(a). Thus, in a conspiracy prosecution, "venue is proper

in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." *Svoboda*, 347 F.3d at 483 (internal quotation marks omitted). Venue is also proper where: "(1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *Id.* Accordingly, "a defendant need not himself have ever been physically present in a district for a conspiracy charge against him to be venued there." *United States v. Rommy*, 506 F.3d 108, 120 (2d Cir. 2007).

## B. Discussion

Abdullaev first contends that the Government failed to establish that venue was proper for the substantive IEEPA violations charged in Counts Five, Six, and Seven. His argument fails. Because the charged substantive offenses involve the transportation of restricted articles in interstate or foreign commerce, they constitute continuing offenses. *See* 18 U.S.C. § 3237(a) ("Any offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense . . . ."). Thus, venue is proper in "any district from, through, or into which such commerce . . . moves." *Id.*

The Government established, to the satisfaction of the jury, that venue was proper in the Eastern District of New York through the testimony of the Vice President of Operations at TNT— the company ARC used for the exports charged in Counts Five, Six, and Seven. The TNT witness testified that at the time of export, "[t]he exit to Europe ha[d] always been from JFK." GA 429. Accordingly, there was sufficient evidence to establish by a preponderance of the evidence that ARC transported restricted parts through the Eastern District of New York.

For the first time on appeal, Abdullaev challenges the District Court's venue instruction.[3] He argues that the District Court should have advised the jury that venue is proper only where a co-

---

[3] The District Court charged the jury on venue as follows:

> The [G]overnment need not prove that the crime itself was committed in this district or that a particular defendant was present here. It is sufficient to satisfy this element if any act in furtherance of the specific crime you are considering occurred within this district. However, even if you find that some act in furtherance of the crime occurred in this district, you must also find that it was foreseeable to the individual defendant you are considering that some act occurred in the Eastern District of New York. . . . Thus, with respect to each count, the [G]overnment has satisfied its venue obligations if you conclude that it is more likely than not that any act in furtherance of

6

conspirator commits an overt act. But this argument misunderstands the law of venue as it pertains to conspiracies. We have repeatedly found venue proper where an out-of-district defendant causes an overt act to be committed by an innocent third party within the district of venue. *See Svoboda*, 347 F.3d at 483-84 (2d Cir. 2003) (finding venue proper where the defendant had notice that his trades were being executed by a broker in the Southern District of New York); *United States v. Kim*, 246 F.3d 186, 192-93 (2d Cir. 2001) (finding venue proper where the defendant "caused communications to be transmitted into and out of the Southern District when he approved fraudulent invoices knowing that [the victim] paid its vendors from New York banks"); *see also United States v. Odunaike*, 273 F. App'x 58, 60 (2d Cir. 2008) (explaining that the phrase "in a district where the defendant intentionally or knowingly causes an act in furtherance of the charged offense" refers to "actions taken by third parties who are not part of the conspiracy, but whose actions furthered the aims of the conspiracy"). Thus, the District Court's venue instruction was not plainly erroneous, since it properly instructed the jury that it "must also find that it was foreseeable to the [defendant] . . . that some act [in furtherance of the crime] occurred in the Eastern District of New York." GA 439.

Abdullaev further contends that the District Court erred by omitting the phrase "overt act" from its instruction. It is well-established that an "overt act" is "any act, innocent or illegal, as long as it is done in the furtherance of the object or purpose of the conspiracy." *Tzolov*, 642 F.3d at 320. Thus, the District Court did not err by supplanting the term "overt act" with its definition: "some act in furtherance of the crime." GA 439.

Finally, Abdullaev correctly notes that the District Court's venue instruction fails to distinguish between the substantive and conspiracy IEEPA counts. But if anything, the instruction holds the Government to a higher burden than otherwise required to establish venue for a substantive IEEPA violation. The District Court's instruction required the jury to find not only that some act in furtherance of the substantive offense occurred within the Eastern District of New York, but that it was foreseeable to Abdullaev that the act would occur there. Thus, insofar as the venue instruction erroneously failed to distinguish between a substantive IEEPA violation and a conspiracy to violate IEEPA, we find this error harmless.

---

the count you are considering occurred within the Eastern District of
New York.

GA 439-40.

7

## III. Publicity and Juror Impartiality

### A. Law

"A district court's decision regarding juror impartiality is reviewed for abuse of discretion and deserves deference." *United States v. Elfgeeh*, 515 F.3d 100, 128 (2d Cir. 2008) (internal quotation marks omitted). District courts usually follow a three-step procedure when investigating whether publicity has potentially prejudiced a juror or otherwise interfered with his ability to decide the case fairly. *See United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir. 1987). First, the court "determine[s] whether the coverage has a potential for unfair prejudice." *Id.* Second, the court "canvass[es] the jury to find out if they have learned of the potentially prejudicial publicity." *Id.* Finally, the court "examine[s] individually exposed jurors—outside the presence of the other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on that juror's ability to decide the case fairly." *Id.*

### B. Discussion

During trial, one of the jurors was overheard in the jury room discussing how the case could be found online. Upon learning of this situation, the District Court immediately conducted a careful and individualized inquiry into the possibility and extent of juror exposure to publicity. The District Court's questioning revealed that Juror Number 8 had discussed with a fellow juror the fact that his mother was able to read about the case online. There was no suggestion that Juror Number 8 himself researched the case online or consulted outside news sources. Absent any indication of actual exposure to outside publicity, we find no flaw in the District Court's handling of this matter.

## IV. Procedural and Substantive Reasonableness of Posobilov's Sentence

### A. Law

We review sentences for both procedural and substantive reasonableness, applying a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (emphasis and internal quotation marks omitted). A sentence is substantively unreasonable only if it "cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (internal quotation marks omitted). The purpose of our review is not to substitute our view for that of the district court, but to "provide a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice

because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

## B. Discussion

### 1. Procedural Reasonableness

Posobilov argues that the District Court procedurally erred by denying his request for an "acceptance-of-responsibility" downward adjustment under U.S.S.G. § 3E1.1.[4] "As the sentencing judge 'is in a unique position to evaluate a defendant's acceptance of responsibility,' [his] determination whether or not to grant the reduction is 'entitled to great deference on review.'" *United States v. Delacruz*, 862 F.3d 163, 178 (2d Cir. 2017) (quoting U.S.S.G. § 3E1.1, cmt. n.5). We will not disturb a court's acceptance-of-responsibility determination "unless it is without foundation." *Delacruz*, 862 F.3d at 178 (internal quotation marks omitted).

Here, the District Court declined to apply a downward adjustment despite finding that Posobilov "had wanted to plead guilty throughout the course of this litigation and nothing could be worked out."[5] Posobilov App. 150. As the District Court explained, "I am dealing with a defendant who went to trial [and] who was convicted." *Id.*; *see also* U.S.S.G. § 3E1.1, cmt. n.2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."). Moreover, Posobilov refused to accept full responsibility for his actions. During the sentencing hearing, he insisted that his participation in the conspiracy was "exaggerated," that he was just doing his "duty," and that he had committed mere "mistakes" that were not "intentional" or "deliberate." Posobilov App. 140. He also continued to deny his involvement in the money laundering conspiracy. *Id.* Finally, while it was Fishenko's intractability that prevented Posobilov from securing a more favorable plea offer, Posobilov always retained the option of pleading guilty to the entire indictment, as Fishenko ultimately did. Accordingly, we find no abuse of discretion in the District Court's refusal to grant a downward adjustment.

---

[4] Section 3E1.1 states in relevant part: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a) (emphasis omitted).

[5] Posobilov's plea agreement with the Government was made contingent upon Fishenko also pleading guilty. Fishenko, in turn, refused to plead guilty until the eve of trial, when it was too late for Posobilov to accept the Government's offer.

Posobilov further claims that the District Court erred in applying a two-level "sophisticated laundering" enhancement under U.S.S.G. § 2S1.1(b)(3).[6] "Sophisticated laundering" means "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." U.S.S.G. § 2S1.1(b)(3) cmt. n.5. Sophisticated laundering typically involves the use of, *inter alia*, "fictitious entities," "shell corporations," "offshore financial accounts," or "two or more levels (*i.e.*, layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate." *Id.*

As noted above, there was ample evidence to convict Posobilov of the money laundering conspiracy charged in Count Ten. Additionally, the Government presented evidence at trial demonstrating that Posobilov was the director and principal operator of Electrodevices—ARC's alter ego and shell corporation. Accordingly, the District Court did not abuse its discretion in applying the sophisticated laundering enhancement.

Finally, Posobilov summarily argues that the District Court did not adequately set forth its basis for denying the acceptance-of-responsibility adjustment and imposing the sophisticated laundering enhancement. It is well-established that "[i]n the absence of record evidence suggesting otherwise, we presume that a sentencing judge has considered the relevant statutory factors." *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). District courts need not fill the record with "robotic incantations that [they have] considered each of the § 3553(a) factors." *Cavera*, 550 F.3d at 193 (internal quotation marks omitted). Nor must they "make specific responses to points argued by counsel in connection with sentencing." *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010).

Here, the District Court expressly adopted the findings of the Presentence Report. Posobilov App. 150. It heard arguments and pleas for leniency from counsel and disagreed with counsel's characterization of the sentence as "greater than necessary." *Id.* at 153. The District Court also found that a *Fatico* hearing[7] would not change the Guidelines calculation, and that it was rejecting counsel's objections to the acceptance-of-responsibility adjustment and the sophisticated laundering enhancement. *Id.* at 151. Accordingly, we find no procedural error.

---

[6] Section 2S1.1(b)(3) provides that if the defendant was convicted under 18 U.S.C. § 1956, and "the offense involved sophisticated laundering, increase by 2 levels." U.S.S.G. § 2S1.1(b)(3) (emphasis omitted).

[7] A "*Fatico*" hearing is "a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence." *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir. 1991); *see also United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

**2. Substantive Reasonableness**

Posobilov challenges the substantive reasonableness of his 135-month sentence. He again emphasizes his willingness to accept the Government's plea offer. He also highlights how he received the most severe sentence of all his co-defendants, including Fishenko—the founder and owner of ARC.

We find that a sentence at the bottom of the Guidelines range was entirely appropriate considering Posobilov's supervisory role in ARC's export scheme. Not only did Posobilov personally circumvent export control laws, but he repeatedly directed his subordinates to lie to suppliers about end uses and users. Additionally, Posobilov sought to promote ARC's illegal activities by facilitating a money laundering conspiracy that enabled ARC to evade detection by suspicious suppliers and U.S. authorities. In sum, the District Court's sentence appropriately reflects the seriousness of the offenses of which Posobilov was convicted.

## CONCLUSION

We have reviewed all of the remaining arguments raised by Abdullaev and Posobilov on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the January 4, 2017 and March 30, 2017 judgments of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11